**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| JAMES E. JOHNSON, BRUCE MOORE and CHRISTOPHER RAY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 04-0963-CV-W-2-FJG |
| UNITED STATES BEEF CORPORATION, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is plaintiff's Motion for Extension of Time to File Expert Disclosures (Doc. # 27), plaintiff's Motion to Join a Party (Doc. # 28), Plaintiff's Motion for Class Certification (Doc. # 32), Plaintiff's Motion for Extension of Time to Complete Discovery (Doc. # 52), Plaintiff's Motion for Reconsideration of Order Denying Motion for Extension of Time (Doc. # 74) and Plaintiff's Motion for Extension of Time to File Response to Defendant's Motion for Summary Judgment (Doc. # 88).

### I. BACKGROUND

This class action is brought by three African Americans who sought employment with United States Beef Corporation at an Arby's restaurant in Lee's Summit, Missouri. Plaintiffs bring this action under Title VII, 42 U.S.C. §§ 1981 and 1981(A) on behalf of themselves and similarly situated African Americans. Plaintiffs allege that defendant discriminated and continues to discriminate against black applicants and employees by not interviewing or hiring qualified black applicants and precluding, delaying and discouraging the promotion of black employees and compensating black employees

less than similarly situated white employees. The plaintiffs seek on behalf of themselves and the proposed class, a declaratory judgment that defendant has engaged in a systemic pattern and practice of racial discrimination in its hiring practices and that such conduct is unlawful. Additionally, they seek a permanent injunction and other equitable relief necessary to undo the effects of defendant's past racial discrimination and to prevent such discrimination from continuing. They also seek front pay, back pay, and other incidental monetary and non-monetary remedies, including an award of costs and expenses incurred in prosecuting this action and attorneys' fees.

Plaintiffs define the proposed class as follows:

> All African Americans who have applied for employment at an Arby's at any time since January 1999, and have been subject to one or more aspects of the systemic racial discrimination described in Count One of this Complaint, including, but not limited to, Arby's discriminatory hiring, selection, compensation and promotion procedures and failure to promulgate, maintain and enforce effective anti-discrimination policies, practices and procedures.

(Plaintiff's Complaint ¶17).

## II. DISCUSSION

### A. Federal Rule Civil Procedure 23(a)

Fed.R.Civ.P. 23(a) provides that in order to maintain a class action, four prerequisites must be satisfied:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are question of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, plaintiffs must meet one of the three subparts of Rule 23(b). In the instant action, plaintiffs allege that certification is appropriate under Rule 23(b)(3). Rule

23(b)(3) applies when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

In Yapp v. Union Pacific Railroad Company, 229 F.R.D. 608, 619 -20 (E.D.Mo. 2005), the Court noted, "[t]he court has wide discretion in determining whether to certify a class. . . . The person seeking to represent the class bears the burden of demonstrating that all four prerequisites are satisfied." Additionally, the Court noted:

> In determining whether to certify a class, the question before the Court is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met. . . . In a Rule 23 determination, the court accepts substantive allegations in the plaintiff's complaint as true. . . . However, because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. . . . Title VII contains no special provisions relieving the plaintiffs of the burden of satisfying the Rule 23 prerequisites. . . . A Title VII class action, like any other class action, may only be certified if the prerequisites of Rule 23(a) have been satisfied.

Id. at 620 (internal citations and quotations omitted).

The Court will now proceed to first analyze whether plaintiffs have met the prerequisites for maintaining a class action.

**1. Numerosity**

"First, the number of potential members of the class must be so numerous that joinder of all members is impracticable." Smith v. United Healthcare Services, Inc., No. Civ. 00-1163 ADM/AJB, 2002 WL 192565, *3 (D. Minn. Feb. 5, 2002). "No arbitrary rules regarding the necessary size of classes have been established. . . . In addition to the size of the class, the court may also consider the nature of the action, the size of the

3

individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." Paxon v. Union National Bank, 688 F.2d 552, 559 -60 (8th Cir. 1982), cert. denied, 460 U.S. 1083 (1983). Plaintiffs argue that this factor is met because it is believed that the class will number in the hundreds in that Arby's has over 500 licensees and over 3,000 locations worldwide.

Defendant argues that plaintiffs have not satisfied this requirement, because they have not shown that joinder of all members would be impracticable. Defendant states that although plaintiffs defined the class as all African Americans who have applied for employment at an Arby's restaurant, defendant states that Arby's L.L.C. has not been served or named as a defendant in this case. Defendant states that it is an Arby's franchisee which operates 235 stores in five states. Defendant argues that the plaintiffs in this case were all applicants at the Lee's Summit, Missouri store. Thus, the only "class" which plaintiffs could claim to represent would be African-American applicants at that store, and this would not be a significant number.

Plaintiffs respond that the EEOC identified seven similarly situated individuals who were also denied employment. Plaintiffs state that they "have opened up their complaint to a 14 month time period, and have extended the complaint to include companion stores under Defendant's ownership. Should plaintiffs locate even one qualified applicant per facility whom was denied an interview and ultimately denied employment, the numerosity requirement of Rule 23 would easily be met." (Plaintiffs' Reply Suggestions, p. 5).

This seems to suggest that plaintiffs are still in the process of locating potential plaintiffs. However, the Court must rule on the status of the case as it currently exists.

The three individual plaintiffs all applied for and were denied positions at the Lee's Summit location. Additionally, plaintiffs have not provided the Court with any information which shows how many African Americans applicants applied at the defendant's other restaurants and were unsuccessful. Plaintiffs have speculated that the size of the class is in the hundreds or even thousands of individuals. But, in reality, plaintiffs have no idea. Thus, the Court finds that plaintiffs have failed to meet their burden with regard to the numerosity requirement. Based on their failure to meet this requirement, the Court could deny plaintiff's Motion, however, the Court will proceed to analyze the other factors as well.

**2. Commonality**

In Yapp, 229 F.R.D. 621, the Court stated:

Commonality and typicality are required to "bridge the gap" between an individual action and one brought on behalf of a group.
> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147,160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

The Court in Yapp also noted that factors to consider in determining whether this requirement has been met include:

> (1) the nature of the employment practices charged; (2) the uniformity or diversity of the employer's employment practices (3) the uniformity or diversity of the class membership; and (4) the nature of the employer's management organization.

Id. at 621 (citations omitted).

Plaintiffs allege that the commonality amongst their claims are the policies and procedures of Arby's impacting African-Americans, including not interviewing or hiring qualified black applicants. Additionally, plaintiffs state that this case involves the application of Title VII to all of the class members' claims.

Defendant argues that plaintiffs have no evidence of any discriminatory treatment and instead are attempting to assert in a conclusory fashion that the policies and procedures for interviewing and hiring are similar and do not vary from one geographic location to the next. However, plaintiffs have failed to identify what policies or procedures they believe are discriminatory. In Yapp the court noted that the plaintiffs had failed to identify the process, procedure or aspect of Union Pacific's decision-making process that was causing the alleged discriminatory impact. Because the plaintiffs had failed to identify the policy or procedure, the Court stated that it was impossible to find:

> common legal or factual issues between the named plaintiffs and any putative plaintiffs when the named plaintiffs have not told this Court what process or procedure caused them to suffer disparate impact, especially considering that the many departments utilize different methods for selecting job candidates that encompass both objective and subjective criteria.

Id. at 622.

Similarly, in the instant case, plaintiffs are also alleging that the policies, practices and procedures of the defendant have had a disparate impact on their employment opportunities. However, like the plaintiffs in Yapp, they have failed to identify what policies or procedures they are referring to. Additionally, when considering the other factors mentioned in evaluating whether the commonality requirement has been met, the Court finds that the nature of the employment practices charged is similar. The

6

second factor is the uniformity or diversity of the employer's employment practices. The Court will assume that the practices are similar, although plaintiffs have offered no evidence to support or prove this assertion. The third factor is the uniformity or diversity of the class membership. This factor is likely to be very different, as there are likely significant differences amongst applicants in terms of their qualifications, education and background. Especially, when comparing applicants in over 235 stores in five states. The last factor is the nature of the employer's management organization. The parties have not provided any information on this factor. Considering all of the above listed factors, the Court does not find that plaintiffs have met their burden to show that their claims share common legal or factual issues with those of the class.

### 3. Typicality

"The typicality rule requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. . . . This requirement is generally satisfied if the claims or defenses of the representatives and the members of the prospective class are based on the same legal or remedial theory." Beckmann v. CBS, Inc., 192 F.R.D. 608, 614 (D.Minn. 2000)(citations omitted). In Yapp, the court identified three factors to consider:

> (1) plaintiff's employment situation and that of the prospective class members; (2) the circumstances surrounding plaintiff's grievances and those surrounding the prospective class members' grievances; and (3) the relief sought by plaintiff and that sought by the class.

Id. at 622.

Plaintiffs state that they are proceeding under Title VII and their claims relate to the common policies, procedures and practices at Arby's which are applied across the board and which adversely impact African Americans as a class. Plaintiffs state that the

class is also pursuing the same legal and remedial theories.

Defendant argues that the claims of the representative plaintiffs are not typical of the claims of the class members where the defendant can assert legitimate non-discriminatory reasons for not hiring the named plaintiffs. In this case, defendant states that it can assert legitimate nondiscriminatory reasons for not hiring the named plaintiffs, and thus their claims are not typical of all unnamed class members.

In analyzing the typicality requirement, the Court in Yapp, stated:

> Usually, under a disparate impact theory, the plaintiffs will point to a facially neutral policy or practice which the plaintiffs contend to prove has a disparate impact on the protected group of employees. Here, however, plaintiffs have not pointed out any actual policy, rather, they just generally point to UPRR's subjective decision making process. In certain situations, subjective employment practices may give rise to a claim of discrimination. Falcon, 457 U.S. at 159, n. 15, 102 S.Ct. 2364. Of course, class certification is not appropriate if the challenged policy or practice does not have a disparate impact on the proposed class. See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 292 (2nd Cir. 1999).

Id. at 622. In Yapp, the Court determined that the plaintiffs had failed to meet the typicality requirement because they had not been able to demonstrate that whatever policy was causing the alleged disparate impact was similar or typical to whatever was causing the disparate impact to others.

The Court agrees with this analysis. Plaintiffs have only alleged in a conclusory fashion that their claims are typical of the claims of the potential other class members. Plaintiffs have not identified what policy of Arby's is supposedly causing the alleged discriminatory impact upon themselves, nor have they shown that this is a policy that applies at all the locations which are operated by defendant. Therefore, the Court finds that plaintiffs have failed to show that their claims are typical of those of the potential class members.

### 4. Adequacy of Representation

> The fourth requirement of Rule 23(a) provides that the plaintiffs show that the representatives will fairly and adequately protect the interests of the class. . . . In order to satisfy this requirement, Plaintiffs must show that: (1)the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge. . . . Otherwise stated, adequate representation turns upon the qualifications and experience of the plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interests antagonistic to the class.

Beckmann, 192 F.R.D. at 614.

Plaintiffs in the instant case state that there are no conflicts among the named plaintiffs or any of the class members and that their interests are coextensive. Additionally, plaintiffs state that their counsel are adequate to vigorously represent the class in light of their general experience in discrimination and class action litigation.

Defendant argues that the named plaintiffs are not adequate representatives of the class. Defendant states that Mr. Moore, testified that he only filed the lawsuit because his father, who knows Mr. Johnson, insisted that he do so. Mr. Moore testified as follows:

**Bruce Moore**

Q. When did you first decide you might have a lawsuit?
A. It was a little while after that.
Q. How did it come up?
A. He brought it up again, asking why – like you said, why I thought I didn't get them.
Q. What did you tell him?
A. I wasn't qualified.
Q. You said, I wasn't qualified..
A. Yes.
. . .
Q. Well, how did it finally come to pass that you decided to sue anybody?
A. Well, he pushed it on.
Q. Dad did?
A. Yes, sir.
Q. How did he push it on?

9

A. Well, he just kept staying on top of me with it. Then – I really don't know.
Q. Did you ever end up talking to Mr. Johnson about a lawsuit?
A. No, sir, I never talked to Mr. Johnson. My father may have.
Q. So why did you end up filing a claim with the EEOC then against Arby's?
A. My father.
Q. He insisted you do it?
A. Yes, sir.
Q. How come you didn't file against any of the other people that didn't hire you?
A. I don't know.
Q. Or did you?
A. No, sir.
Q. Did you Dad help you fill out the complaint form?
A. Yes, sir.
. . .
Q. You didn't fill out Exhibit 2 [Charge of Discrimination Form], did you?
A. No, sir.
Q. The typewritten stuff?
A. No, sir.
Q. Who did, do you know?
A. No, sir.
. . .
Q. This says you believe they hired three or four people all of whom are Caucasian. Do you know who those people were?
A. No, sir.
Q. Where did you get that information?
A. I don't know.
Q. Somebody else put that in there, maybe your dad?
A. Yes, sir.
Q. Do you know if it was your dad?
A. I'm not sure. I didn't receive – I didn't know anything about this till it was sent to me.
Q. You knew nothing about –
A. I mean, I knew -
Q. – Exhibit 2 until it was sent to you where, at your home?
A. Yes, I knew about the paper, but I didn't know what was written.
Q. Who told you about the paper?
A. My father.
Q. So you never actually went to the Missouri Commission on Human Rights, correct?
A. No, correct.
Q. You never went to the EEOC?
A. Correct.
Q. The next sentence says, "The information known to me also suggests that this location has never employed Blacks." Do you know why that's in there?
A. No, sir. It must be my father.
Q. You don't have any information that this location never hired Blacks, do you?
A. No.
. . .
Q. So other than the fact that you didn't get the job, do you have any other information

that would suggest that you didn't get the job because of your race?
A. No, sir.

(Moore Depo. pp. 32-37).

Q. It also says that "United –meaning US Beef – "has acted in a manner generally applicable to the class" – meaning African-Americans– "by refusing to adopt or following employment policies, practices and procedures which do not have a disparate impact or otherwise systematically discriminate against the class." Do you have any knowledge of that at all?
A. No, sir.
. . .
Q. Is it fair to say that you're in this lawsuit because your dad wanted you in this lawsuit?
A. You could.

(Moore Depo. pp. 42-43).

**Christopher Ray**

In his deposition, Mr. Ray testified as follows:

Q. Why do you believe that you didn't get an interview at Arby's?
A. I'm not sure.
Q. What prompted you to get in this lawsuit?
A. I was just – Julius and his dad.
. . .
(Ray Depo. pp. 40-41

Q. This says, "I believe that I and other Black applicants have been denied employment due to our race." Why do you believe you were denied employment due to your race, if you do?
A. I'm not sure I can - I can't answer that, I'm not sure.

(Ray Depo. p. 45)

Q. Other than your belief that you didn't get an interview because of your race, do you have any other evidence of that whatsoever?
A. No.
Q. Do you have any knowledge of any of the policies or procedures of US Beef in hiring, promotion, compensation?
A. No.

(Ray Depo. 52- 53).

Q. Do you know whether any of the Arby's practices regarding hiring and promotion of employees are discriminatory?

A. No.
Q. Do you know if they are excessively subjective?
A. No.
Q. Do you know what that means?
A. No.

(Ray Depo pp. 55).

Q. But you don't know if you got refused because of your race or because you had no prior job history, do you?
A. No, but I just – no.

(Ray Dep. p. 56).

**James E. Johnson**

Mr. Johnson in his deposition testified as follows:

Q. Are you attempting to represent a class of people who have been rejected by Arby's for employment?
A. No, I'm not attempting to represent –
Q. Who are you attempting to represent?
A. Myself.

(Johnson Depo. p. 153).

In Bennett v. Nucor Corporation, No. 3:04CV00291SWW, 2005 WL 1773948

(E.D.Ark. July 6, 2005), the Court stated:

> Adequacy of representation, required under Rule 23(a)(4), is perhaps *the most important* of all prerequisites to certification of a class action. See Bishop v. Committee on Professional Ethics and Conduct, 686 F.2d 1278, 1288 (8th Cir. 1982). A factor relevant to the determination of adequacy of representation is the named party's familiarity with the conditions he challenges on behalf of the class.

Id. at *4 (emphasis added).

In the instant case, it is apparent from the deposition testimony cited above, that two of the named plaintiffs, Bruce Moore and Christopher Ray, know nothing about the allegations in this case and are only involved in the case because of Mr. Moore's father. Moore and Ray admit that they have no knowledge of any of defendant's policies which

they claim are discriminatory. Moore even admitted that he did not even fill out the EEOC or the Missouri Commission on Human Rights Act claim forms. Additionally, James Johnson states that he has no interest in representing the class and is only interested in representing himself. Thus, the Court finds that none of the named plaintiffs are qualified to act as representatives for the proposed class.

With regard to the adequacy of class counsel, defendant notes that plaintiff's counsel, Elle Sullivant, was recently removed from a case in front of Judge Wright. Additionally, defendant states that as of September 14, 2005, Ms. Sullivant had engaged in no discovery in this case, even though the case was filed on October 22, 2004. Additionally, defendant notes that Ms. Sullivant has missed numerous filing deadlines in this case. Finally, defendant states that Ms. Sullivant's resume reveals no experience in any other class action litigation. With regard to Ms. Sullivant's co-counsel, Mr. McMillen, defendant notes that his primary experience is as a bankruptcy attorney in Texas and Tennessee.

Ms. Sullivant responds that she should not be penalized for one unfortunate encounter with Judge Wright. However, the Court is aware that Ms. Sullivant has had difficulties in other cases as well. In one case, Ms. Sullivant was personally sanctioned by another judge in the Western District of Missouri. See Harris v. Chand, Case No. 04-6004-CV-SJ-ODS (Docs. # 57, 68). Ms. Sullivant lists a number of cases in which she received a favorable result for her client, however, none of those cases involved class action litigation. The Court notes that on the signature block, Ms. Sullivant designates herself as the "Attorney in charge for plaintiffs." Mr. McMillen does appear to have some experience in class action litigation, it does not appear that he has been significantly involved to date in this case and he is not designated as the lead counsel.

Thus, even if the Court were inclined to certify this case as a class action, which it is not, the Court does not find that plaintiffs have met their burden of demonstrating that both themselves and their attorneys are "able and willing to prosecute this action competently and vigorously." Beckmann, 192 F.R.D. at 614.

In summary, the Court does not find that plaintiffs have succeeded in carrying their burden with regard to any of the four prerequisites for maintaining a class action. Because the Court has determined that plaintiffs have failed to meet any of the prerequisites for maintaining a class action under Fed.R.Civ.P. 23(a), there is no need to address whether plaintiffs have met any of the subparts of Fed.R.Civ.P. 23(b). Accordingly, the Court hereby **DENIES** plaintiff's Motion for Class Certification (Doc. # 31).

### B. Discovery Motions

Also pending before the Court are several discovery motions. Plaintiff has filed a Motion for Extension of Time to File Expert Disclosures; Motion to Join a Party; Motion for Extension of Time to Complete Discovery; Motion for Reconsideration of Order Denying Motion for Extension of Time and Motion for Extension of Time to File Response to Defendant's Motion for Summary Judgment.

The Motion to Extend the Time to Disclose Expert Witnesses and the Motion for Leave to Join Additional Parties were both filed on August 2, 2005. Pursuant to the Scheduling Order, plaintiffs' deadline for disclosing expert witnesses was August 2, 2005 and the deadline for joining additional parties was June 1, 2005. It appears from the parties' pleadings that plaintiffs' counsel initially contacted defendant's counsel about extending the deadlines on May 31, 2005. Defendant's counsel responded that he would have no objection to extending the deadlines if plaintiffs' counsel would get

14
Case 4:04-cv-00963-FJG   Document 96   Filed 03/14/06   Page 14 of 16

leave of Court to extend all deadlines at that time. However, plaintiffs' counsel took no action for two months and did not file a motion to extend any deadlines until August 2, 2005. It is unclear what caused this delay or whether plaintiff assumed that the parties could agree that the deadlines would be extended by mutual agreement without the need for filing a motion with the Court. Plaintiff filed another motion to Extend Scheduling Order deadlines on September 29, 2005 and another motion on November 30, 2005. On December 1, 2005, the Court denied the motion because plaintiff failed to specify the discovery that needed to be completed and failed to provide a specific schedule for the completion of discovery. Plaintiff filed a motion for reconsideration of the Order denying the Motion to Extend the Deadlines and has also filed a Motion for Extension of Time to Respond to Defendant's Summary Judgment Motion. It is clear to the Court after reading through all of the various motions, responses and replies relating to these motions that the problems began when plaintiffs' counsel failed to seek the extension of the deadlines which she initially discussed with defendants' counsel in May. Although it is not clear why plaintiffs' counsel did not take any action at that time, the Court believes that much of this briefing and the resultant delays could have been avoided if the parties had simply requested a teleconference with the Court. Regardless, of the reasons, the Court will allow the parties some additional time to complete discovery and to finish briefing the motion for summary judgment. The Court will be issuing a Revised Scheduling and Trial Order with the new dates. Counsel are cautioned to strictly adhere to these deadlines and are advised that there will be no further extensions of these deadlines. However, the Court declines to grant plaintiff's request to add an additional party. The deadline for adding additional parties or amending the pleadings was June 1, 2005. Plaintiffs' counsel did not even request an

15
Case 4:04-cv-00963-FJG   Document 96   Filed 03/14/06   Page 15 of 16

extension of this deadline until two months later, on August 2, 2005.

## III. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby rules as follows: Plaintiffs' Motion for Extension of Time to File Expert Disclosures (Doc. # 27) is hereby **GRANTED**; Plaintiffs' Motion to Join a Party is hereby **DENIED** (Doc. # 28); Plaintiffs' Motion for Class Certification (Doc. # 31) is hereby **DENIED**; Plaintiffs' Motion for Extension of Time to Complete Discovery (Doc. # 52) is hereby **GRANTED**; Plaintiffs' Motion for Reconsideration of Order Denying Motion for Extension of Time (Doc. # 74) is hereby **GRANTED** and Plaintiffs' Motion for Extension of Time to File Response to Defendant's Motion for Summary Judgment (Doc. # 88) is hereby **GRANTED**.

Date: March 14, 2006      **S/ FERNANDO J. GAITAN JR.**
Kansas City, Missouri     Fernando J. Gaitan Jr.
    United States District Judge